Jennifer Insley-Pruitt (jennifer.insley-pruitt@dechert.com)
Kevin Gibbs (kevin.gibbs@dechert.com)
**DECHERT LLP**
Three Bryant Park
1095 Avenue of the Americas
New York, NY 10036-6797
Telephone: +1 212 698 3500
Facsimile: +1 212 698 3599

*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BLU-RAY DISC ASSOCIATION,<br><br>                              Plaintiff,<br><br>v.<br><br>TOP MEDIA, INC. and NEW<br>CENTURY MEDIA CORP.,<br>                              Defendants. | Civil Action No. _____<br><br><br>**COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff, Blu-ray Disc Association ("Plaintiff" or "BDA"), by its undersigned attorneys, for its Complaint against defendants Top Media, Inc. ("Top Media") and New Century Media Corp. ("New Century Media") (collectively, "Defendants"), alleges as follows:

### SUBSTANCE OF THE ACTION

1.      The Blu-ray Disc format is a digital optical disc storage format that is well-known for providing industry-leading high-definition picture quality and audio to home entertainment consumers.

2.      Plaintiff Blu-ray Disc Association is an industry consortium made up of companies from the consumer electronics, information technology, media, entertainment, and

software industries devoted to developing and promoting the Blu-ray Disc format.  The BDA is responsible for establishing Blu-ray Disc format standards and licensing the Blu-ray Disc specifications associated with Blu-ray Disc products (the "BDA Technology") to licensees, which include content providers, disc replicators, consumer electronics manufacturers, retailers, and distributors.

3.     In order to identify products incorporating the BDA Technology, BDA uses and licenses many trademarks consisting of or incorporating the term BLU-RAY, including many federally registered United States trademarks (all of BDA's registered and common law United States trademarks collectively, the "BDA Marks").  Only authorized licensees of BDA have the right to manufacture products incorporating the BDA Technology or bearing the corresponding BDA Marks.

4.     Defendant Top Media, Inc. ("Top Media") once held a license to use BDA Technology to manufacture Blu-ray Disc products, and to mark its Blu-ray Disc products with the BDA Marks.  But after Top Media's license was terminated in 2016 due to Top Media's material breach of its license agreement, Top Media was expressly obligated under the terms of that agreement to immediately cease all use of the BDA Marks and BDA Technology.  New Century Media, Top Media's distributor, was likewise expressly obligated to cease distribution of any products incorporating the Blu-ray Disc format received from Top Media.

5.     Notwithstanding this express obligation, Top Media continued and still continues to create products incorporating BDA Technology and bearing the BDA Marks, without license or authorization – and New Century Media continued and still continues to market and sell these infringing products.  In continuing to use the BDA Marks following termination for breach, in connection with goods similar or identical to those offered under the BDA Marks by the BDA's

2

lawful licensees, Defendants seek to appropriate BDA's well-known BDA Marks, to trade on the goodwill associated with the BDA Marks, and to confuse and deceive both individual and corporate consumers that come across Defendants' unauthorized use.

6.    To protect its rights, reputation, and goodwill in the BDA Marks and associated brand, BDA brings this action for trademark infringement under Section 32(1) of the Trademark Act of 1946 (the "Lanham Act"), 15 U.S.C. § 1114; false designation of origin and unfair competition under Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125; dilution under New York's General Business Law § 360-*l*, unfair competition and trademark infringement under the common law of New York, and breach of contract.  BDA seeks permanent injunctive relief, an accounting of Defendants' profits flowing from its misuse of the BDA Marks, damages, attorneys' fees, costs, and expenses, and such other relief as the Court deems just and proper.

## PARTIES

7.    Plaintiff Blu-ray Disc Association is a nonprofit mutual benefit corporation organized and existing under the laws of California with a principal place of business at 3855 SW 153rd Street, Beaverton, Oregon 97003.

8.    Upon information and belief, defendant Top Media, Inc. is a corporation organized and existing under the laws of the state of California with a principal place of business at 2727 Pellissier Place, City of Industry, California 90601.

9.    Upon information and belief, defendant New Century Media Corp. is a corporation organized and existing under the laws of the state of California with a principal place of business that is also at 2727 Pellissier Place, City of Industry, California 90601.

## JURISDICTION AND VENUE

10.     This action arises under the Trademark Act of 1946, as amended (the "Lanham Act"), 15 U.S.C. § 1051 et seq., and applicable state and common law.  The Court has original jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338 (b).  The Court has supplemental jurisdiction over the state law claims under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

11.     This Court has personal jurisdiction over Defendants and venue is proper in this district because Defendant Top Media consented to jurisdiction and venue in this district, and because Defendant New Century Media is so closely related to Top Media that it is foreseeable that New Century Media would also be bound by this clause.

12.     Specifically, Article 16.8 of the September 25, 2012 Blu-ray Disc Read Only Format 2.0 and Logo License Agreement between Plaintiff and Defendant Top Media provides as follows:

> [A]ll disputes between the parties hereto arising out of or in connection with the interpretation or execution of this Agreement, Licensor's licensing of the Logo, the RPC Logo or the BD-ROM Format Specifications, or Licensee's and its Licensed Affiliates' use of the BD-ROM Format Specifications, the Logo, the RPC Logo or any confidential information shall be finally settled by the federal or state courts located in the County of New York, New York; and each party to this Agreement hereby: (i) irrevocably consents to the exclusive jurisdiction of such courts for the resolution of such disputes; (ii) irrevocably consents to the service of process of said courts in any such dispute by personal delivery or mailing of process by registered or certified mail, postage prepaid, at the respective address set forth in Article 16.4 above; [and] (iii) irrevocably waives any objection that it may now or hereafter have to the venue of any such action or proceeding in such courts or to the convenience of conducting or pursuing any action or proceeding in any such court.

13.     Article 16.7 of the same agreement further provides that any disagreement between the Parties pertaining to the agreement shall be governed by New York law:

This Agreement shall be governed by and construed in accordance with the substantive laws of the state of New York, as if this Agreement were wholly executed and wholly performed within said state, and without reference to the conflict of laws principles thereof…

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

A.      Plaintiff's Business and BDA Marks

14.      BDA was founded in 2004 as a consortium of companies with an interest in or engaged in the development, manufacture, or sale of products using the Blu-ray Disc format.

15.      The mission of BDA remains the same as when it was founded nearly two decades ago:  namely, to develop Blu-ray Disc specifications, to ensure Blu-ray Disc products are implemented by licensees according to the intent of the specifications, to promote the wide adoption of Blu-ray Disc formats, and to provide useful information to those interested in supporting Blu-ray Disc formats.

16.      Among the most widely sold Blu-ray Disc products is the pre-recorded Blu-ray Disc video — a licensed product that typically contains movies or re-issued television shows in high-definition format.  The first Blu-ray Disc video titles were released in June 2006.  By mid-2008, all major Hollywood studios announced their support for the Blu-ray Disc video format.

17.      BDA licenses its BDA Technology and BDA Marks for use in and in connection with Blu-ray Disc products, solely pursuant to the terms of each license.

18.      The BDA now has more than 250 licensees, including companies in the consumer electronics, information technology, media, entertainment, and software industries.

19.      BDA reserves the right to terminate its license agreements if the licensee fails to comply with terms and conditions of the license agreement or fails to pay the licensing fee.

20.    BDA has invested a substantial amount of time, effort, and money in advertising and promoting the BDA Marks worldwide.

21.    Owing to BDA's long, exclusive, and extensive use of its BDA Marks, the BDA Marks have acquired enormous value and have become well-known in the industry as identifying and distinguishing BDA and its licensed goods exclusively.

22.    BDA has obtained federal registration of many of its BDA Marks, including but not limited to the following:

| _Mark_ | _U.S. Reg. No._ | _Class and Goods_ |
|---|---|---|
| **BLU-RAY DISC** | 2901104 | Class 9: Optical and magneto-optical disc players and recorders for audio, video and computer data; blank optical and magneto-optical discs, pre-recorded optical and magneto-optical discs featuring music, text data, still images and motion pictures; televisions; video cameras; video game machines for use with televisions |
|  | 4039248 | Class 9: Optical and magneto-optical disc players and recorders for audio, video and computer data; pre-recorded optical and magneto-optical discs featuring music, text data, still images and motion pictures; optical disc drives for computers |
|  | 4039249 | Class 9: Optical and magneto-optical disc players and recorders for audio, video and computer data; pre-recorded optical and magneto-optical discs featuring music, text data, still images and motion pictures; optical disc drives for computers |
|  | 3657054 | Class 9: Optical and magneto-optical disc players and recorders for audio, video and computer data; blank optical and magneto-optical discs; pre-recorded optical and magneto-optical discs featuring music, text data, still images and motion pictures; video game machines for use with televisions |

| | | |
|---|---|---|
|  | 3657060 | Class 9: Optical and magneto-optical disc players and recorders for audio, video and computer data; blank optical and magneto-optical discs; pre-recorded optical and magneto-optical discs featuring music, text data, still images and motion pictures; video game machines for use with televisions |
| ULTRA HD BLU-RAY | 5638178 | Class 9: Optical and magneto-optical disc players and recorders for audio, video and computer data; pre-recorded optical and magneto-optical discs featuring music, text data, still images and motion pictures; optical disc drives for computers |
|  | 5649482 | Class 9: Optical and magneto-optical disc players and recorders for audio, video and computer data; pre-recorded optical and magneto-optical discs featuring music, text data, still images and motion pictures; optical disc drives for computers |

23.     BDA's registrations for the BDA Marks are valid, subsisting, and in full force and effect.  Many of the registered BDA Marks have become incontestable, and therefore constitute conclusive evidence of the validity of the marks and BDA's exclusive right to use the specified marks in connection with the identified goods.

B.     The ROM2 FLLA Agreement Between Defendant Top Media and Blu-Ray

24.     On September 25, 2012, BDA and Defendant Top Media entered into a standard form of Version 1.4 of the Blu-ray Disc Read Only Format 2.0 and Logo License (the "ROM2 FLLA Agreement").

25.     Article 2.1 of the ROM2 FLLA Agreement allowed Top Media to "use the BD-ROM Format Specifications, including Confidential Information contained therein, solely to develop, have developed, [and] manufacture . . . these BD-ROM Products, that are identified and selected by [Top Media] in Schedule A."

26.     The ROM2 FLLA Agreement defines Confidential Information as the technical information and trade secrets provided to licensees pursuant to the ROM2 FLLA Agreement in

order to permit those licensees to manufacture products incorporating the BDA Technology,

including the BD-ROM Disclosed Format Specifications:

> "Confidential Information" shall mean the technical information, know-how and trade secrets contained in the BD-ROM Disclosed Format Specifications and proprietary information that is either marked "confidential" or "proprietary" when disclosed in written form, or indicated as "confidential" or "proprietary" when disclosed orally and confirmed in writing within thirty (30) calendar days after such disclosure.

27.     The ROM2 FLLA Agreement also requires all licensees to obtain First Product

Model Verification ("FPMV") *before* the licensee can begin manufacturing or selling any BD-

ROM products.

28.     Specifically, Schedule B-1 of the ROM2 FLLA Agreement provides as follows:

> Before the initial commercial shipment of a First Production Format Model or First Production CPO Model, Licensee or the applicable Licensed Affiliate shall test such First Production Format Model or First Production CPO Model, using relevant testing tools and in accordance with the procedures set forth in the applicable portion(s) of the Test Specification (N.B.: with regard to First Production Format Models, the most recent version of the Test Specification) ("Self-Test"). For the avoidance of doubt, any First Production CPO Model is only required to pass those tests related to the Content Protection Obligations in the Test Specification.
>
> After such Self-Test, but before the initial commercial shipment of the applicable First Production Format Model or a First Production CPO Model, Licensee or the applicable Licensed Affiliate shall contact Licensor to inform Licensor that Licensee or such Licensed Affiliate is ready to enter into the Testing Center verification process. Licensee or such Licensed Affiliate shall then, at its sole discretion, select a Testing Center among the then-available Testing Centers, as listed on the website (http://www.blu-raydisc.info/). Licensee acknowledges and agrees that such Testing Center shall have the right to require a reasonable number of samples to be submitted by Licensee or such Licensed Affiliate and may give additional instructions. In addition to complying with any such instructions, Licensee or such Licensed Affiliate shall submit the results of its Self-Test, together with samples of the First Production Format Model or the First Production CPO Model so tested to such Testing Center.

29.     Under Schedule B-7 of the ROM2 FLLA Agreement, if a licensee fails the self-test and fails to submit a modified product, the product will be deemed non-Compliant and without license to the BDA Technology and the BDA Marks:

> If, . . . as the result of the second verification, in the sole reasonable judgment of the Testing Center, the sample product still fails to pass, or . . . Licensee fails to submit a modified product within the indicated period to the same Testing Center, Licensor shall have the right to request that Licensee further modify the product and submit such further modified product to the Testing Center until (i) the result of the verification indicates that such product passes the applicable Test Items, or (ii) Licensor declares and informs Licensee of a final failure of such product to so pass ("Final Failure") at this time the product will be deemed non-Compliant and without license to the Specification, Logo or RPC Logo. All production and commercial shipments of such non-Compliant products shall cease.

30.     Article 5.4 of the ROM2 FLLA Agreement further provides that "Licensee's or Licensed Affiliates' use, manufacture, marketing, or sale of purported BD-ROM Products . . . excluding BD-ROM Tester, that are not Compliant, shall constitute a material breach of this Agreement."

31.     Article 14.3 of the ROM2 FLLA Agreement allows either party to terminate the ROM2 FLLA Agreement in the event of a material breach, including the sale of non-Compliant BD-ROM Products:

> Either party may terminate this Agreement immediately in the event of a Material Breach by the other party.

32.     Certain provisions of the ROM2 FLLA Agreement survive termination, including termination for breach. *See* Art. 14.7 ROM2 FLLA.  These include Article 8, which requires licensees to use Confidential Information contained in the BD-ROM Specifications, including those relating to BDA Technology, only "pursuant to the terms and conditions of this Agreement."

C.      Relationship Between Defendants Top Media and New Century Media

33.     Upon information and belief, and upon Plaintiff's investigation of Defendants, Defendant Top Media is a manufacturer of media products.

34.     Upon information and belief, and upon Plaintiff's investigation of Defendants, Defendant New Century Media is an affiliated company closely related to Top Media that markets, sells, and distributes the products manufactured by Top Media.

35.     Defendants are both located at the same address of 2727 Pellissier Place in City of Industry, California, in a building that, upon information and belief, is marked with the New Century Media logo:



36.     According to the online records of the California Secretary of State, Defendants have the same president, Carson Yu.

37.     Representatives of Top Media have repeatedly communicated with Plaintiff from *newcenturymediausa.com* email addresses.

38.     Defendants' original application for the Blu-ray Disc Read Only Format 2.0 and Logo License was filed in August 2012 and listed New Century Media as the proposed licensee.

A month later, Defendants contacted BDA from Jennifer Yu's *newcenturymediausa.com* email address seeking to "resubmit the application under another company": namely, Top Media. Defendants subsequently executed the ROM2 FLLA Agreement in the name of Top Media.

39.     Upon information and belief, and upon BDA's investigation of Defendants, Defendants have intermingled corporate assets and otherwise failed to maintain separate corporate identities and form.

40.     Upon information and belief, and upon BDA's investigation of Defendants, Defendants share unity of interest and ownership such that the two entities constitute, for all practical purposes, a single enterprise.

D.      <u>Defendants' Unlawful Conduct</u>

1.      *Defendants' Breach of the ROM2 FLLA Agreement*

41.     Upon information and belief, Defendants began manufacturing and distributing products incorporating the BDA Technology and bearing the BDA Marks no later than September 2012 – the effective date of the ROM2 FLLA Agreement.

42.     However, Defendants did not comply with their obligation to complete a First Product Model Verification before selling these products.

43.     In fact, although the BDA License Office reminded Defendants of their obligations under the ROM2 FLLA Agreement many times, Defendants did not even initiate the FPMV process until nearly three years after they began manufacturing, selling, and distributing products incorporating the BDA Technology and bearing the BDA Marks.

44.     Even after Defendants initiated the FPMV process, the product samples they submitted failed the minimum self-test requirements mandatory for all BDA licensees.

45.     On March 31, 2016, pursuant to Articles 5.4 and 14.3 of the ROM2 FLLA Agreement, BDA terminated the ROM2 FLLA Agreement with Top Media for material breach based on Defendants' manufacture and sale of BDA products that had not passed First Product Model Verification.  BDA's termination letter to Top Media (the "Termination Letter") is attached as Exhibit A hereto.

46.     The Termination Letter required Top Media to immediately "cease manufacture, distribution, shipment, and sale of any and all products that utilize the Blu-ray Disc format, incorporate BDA Technology, or bear BDA trademarks; and destroy any and all products in Top Media's possession that utilize the Blu-ray Disc format, incorporate BDA Technology, or bear BDA trademarks."

47.     The Termination Letter explicitly applied to all BDA products, and applied to "Top Media and any of its affiliates."

48.     BDA also sent a separate notice to Defendant New Century Media on March 31, 2016, advising New Century Media that Top Media was not authorized to manufacture, distribute, or sell any products incorporating the BDA Technology, or to use the BDA Marks for any purpose.  *See* Exhibit B.

2.     *Defendants' Infringement of BDA's Valuable Rights and Breach of Contract*

49.     In March and April of 2021, BDA became aware that Defendants were manufacturing, distributing, and selling products incorporating the BDA Technology and bearing the BDA Marks, in clear violation of BDA's exclusive rights.

50.     For months, BDA engaged in back-and-forth correspondence with Defendants. BDA ultimately offered to try to reach a new license agreement with Defendants that would

allow them to undertake these activities pursuant to license rather than unlawfully.   *See* Exhibit C.

51.     When Defendants did not accept this offer, BDA informed Defendants that Defendants should immediately cease their infringing use of the BDA Technology and the BDA Marks.  BDA also demanded that Defendants immediately pay all back license fees that an *authorized* licensee would have paid during the time period of Defendants' unauthorized use. *See* Exhibit D.

52.     Defendants did not comply with these demands.

53.     Despite the ample notice provided by BDA, Defendants openly market and sell their unauthorized products even to this day – and to use the BDA Marks without license, including on their website at *https://www.newcenturymediausa.com/blu_ray*:



54.     By virtue of BDA's federal registrations, Defendants are on constructive notice of BDA's prior exclusive rights in the BDA Marks.

55.     In addition, Defendants have actual knowledge of BDA's rights in the BDA Marks, given that Defendant Top Media was previously a licensee of BDA.

56.     Defendants are clearly aware that they are required to obtain a license from BDA in order to undertake their activities, because they falsely claim to hold this license in order to attract customers:

⚠ Not secure | newcenturymediacorp.com/q_and_a.html

**Q. Is New Century Media licensed for the optical discs which it manufactures?**
*A. Yes, NCM is licensed for DVD with One-Red ("Philips") and for Blu-ray with One-Blue and BDA under Top Media Inc.*

57.     Defendants' use of BDA Marks identical to those used by BDA and/or its authorized licensees without license or authorization is likely to cause confusion, mistake, or to deceive consumers, and threatens to destroy the commercial value of the rights held and licensed by BDA.

58.     Defendants' infringing conduct is knowing, willful, and in bad faith, and seeks to unfairly take for itself the benefit of the hard-earned goodwill BDA has built up over many years in the BDA Marks.

59.     Defendants' conduct has caused and, unless enjoined by this Court, will continue to cause irreparable injury to BDA.

**FIRST CLAIM FOR RELIEF**
**FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114)**

60.     BDA repeats and realleges each of the foregoing allegations as if fully set forth herein.

61.     Defendants are not licensed or authorized to use the BDA Marks for any purpose.

62.     Defendants' unauthorized use of the BDA Marks in connection with the same or similar goods and services offered by BDA and/or its authorized licensees and bearing the BDA Marks is likely to cause confusion or to cause mistake or to deceive the public as to the source or sponsorship of Defendants' goods and services.  More specifically, consumers are likely to be misled into believing that Defendants' goods and services are licensed by or otherwise approved by BDA.

63.     Defendants were on both constructive and actual notice of BDA's exclusive rights in the BDA Marks prior to its unauthorized use of identical BDA Marks.

64.     Defendants' unauthorized use of the BDA Marks is willful, in bad faith, and with full knowledge of the goodwill and reputation associated with the BDA Marks, and with full knowledge that Defendants has no right, license, or authority to use the BDA Marks.

65.     Defendants' acts are intended to reap the benefit of the goodwill that BDA has created in its BDA Marks.

66.     Defendants' acts constitute infringement of BDA's federally registered BDA Marks in violation of Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1).

67.     Defendants' conduct has caused and is causing immediate and irreparable injury to BDA and, unless enjoined by this Court, will continue to both damage BDA and deceive the public.

68.     BDA has no adequate remedy at law.

## SECOND CLAIM FOR RELIEF
## FEDERAL UNFAIR COMPETITION AND
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

69.     BDA repeats and realleges each of the foregoing allegations as if fully set forth

herein.

70.     Defendants' unauthorized and unlicensed use of the BDA Marks constitutes false

designation of origin and false representation with respect to the origin and nature of Defendants'

goods and services.  Defendants' use of the BDA Marks is likely to cause confusion, mistake, or

deception as to the source of Defendants' goods and services and is likely to create the false

impression that Defendants are affiliated with BDA or that its goods and services are authorized,

sponsored, endorsed or licensed by, or affiliated with, BDA.

71.     Defendants' actions constitute unfair competition in violation of Section 43(a) of

the Lanham Act, 15 U.S.C. § 1125(a).

72.     Defendants' use of the BDA Marks on their unauthorized, unlicensed goods

threatens to destroy the value, exclusivity, and reputation of the BDA Marks.

73.     Defendants' conduct has caused and is causing immediate and irreparable injury

to BDA and, unless enjoined by this Court, will continue to both damage BDA and deceive the

public.

74.     BDA has no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
## DILUTION UNDER NEW YORK LAW
## (N.Y. GENERAL BUSINESS LAW § 360-*l*)

75.     BDA repeats and realleges each of the foregoing allegations as if fully set forth

herein.

76.     As a result of extensive use and promotion of the BDA Marks and the goods

provided by BDA and/or its authorized licensees and bearing the BDA Marks for years, the BDA

Marks have become well-known in the State of New York, are distinctive of goods incorporating the BDA Technology, and are widely recognized among the consuming public as designating goods incorporating the BDA Technology.

77.    Defendants' unauthorized use of the BDA Marks is diluting and is likely to continue diluting the BDA Marks by blurring the distinctiveness thereof.

78.    As a result of Defendants' unauthorized use of the BDA Marks, the BDA Marks are likely to lose their ability to uniquely identify BDA or BDA's technology in violation of Section 360-*l* of the General Business Law of the State of New York.

79.    Defendants' conduct has caused and is causing immediate and irreparable injury to BDA and, unless enjoined by this court, will continue to both damage BDA and deceive the public.

80.    BDA has no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**TRADEMARK INFRINGEMENT AND UNFAIR**
**COMPETITION UNDER NEW YORK COMMON LAW**

81.    BDA repeats and realleges each of the foregoing allegations as if fully set forth herein.

82.    The BDA Marks are identified and associated in consumers' minds exclusively with the Blu-ray Disc format and the BDA Technology.  By virtue of Defendants' unauthorized use of BDA Marks on products identical to those offered by BDA's authorized licensees and bearing the BDA Marks and Defendants' false claim to be licensed by BDA, the public is likely to be deceived as to the source of Defendants' goods and services or as to the relationship between Defendants and BDA.

83.     Defendants' use of the BDA Marks occurred long after BDA established rights in the BDA Marks and long after the public identified the BDA Marks exclusively with BDA.

84.     Defendants have used the BDA Marks with full knowledge of BDA's prior rights in the BDA Marks and of the renowned success of authorized goods sold under and bearing such marks. Defendants' use of the BDA Marks is for the willful and calculated purpose of misappropriating and trading on BDA's goodwill and business reputation. Defendants' use of the BDA Marks is likely to cause confusion and mistake among the public and to deceive the public as to the nature and origin of Defendants' goods and services in violation of BDA's rights under the common law of the State of New York.

85.     Defendants were on notice of BDA's exclusive rights in the BDA Marks before their unauthorized use of the BDA Marks in connection with their goods by virtue of the prior ROM2 FLLA Agreement, by virtue of BDA's open use and licensing of the BDA Marks, and by virtue of BDA's federal trademark registrations. Defendants' use of the BDA Marks is willful, in bad faith, and with full knowledge of BDA's prior use of, exclusive rights in, and ownership of the BDA Marks and with full knowledge of the reputation and goodwill associated with the marks. By using the BDA Marks without license or authorization, Defendants have been unjustly enriched and BDA has been damaged.

86.     The aforesaid conduct of Defendants constitutes unfair competition and trademark infringement under the common law of the State of New York.

87.     Defendants' conduct has caused and is causing immediate and irreparable injury to BDA and, unless enjoined by this court, will continue to both damage BDA and deceive the public.

88.     BDA has no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### <u>BREACH OF CONTRACT</u>

89.    BDA repeats and realleges each of the foregoing allegations in paragraphs 1 through 57 as if fully set forth herein.

90.    The ROM2 FLLA Agreement between BDA and Defendant Top Media was valid and binding at the time of entry.

91.    The ROM2 FLLA Agreement required, and still requires, Defendants to use Confidential Information solely for the purposes outlined in the Agreement.  *See* Art. 8, 14.

92.    Defendants have used BDA's Confidential Information for purposes other than those identified in the Agreement.

93.    Specifically, Defendants have used and are still using the Confidential Information in order to manufacture unlicensed and unauthorized products that incorporate the BDA Technology and bear the BDA Marks.

94.    By reason of the foregoing, Defendants breached the ROM2 FLLA Agreement.

95.    As a result of Defendants' breach of the ROM2 FLLA Agreement, BDA is entitled to an award of damages in an amount to be determined at the trial of this action, plus an award of attorneys' fees, costs, expenses and interest.

## <u>PRAYER FOR JUDGMENT</u>

WHEREFORE, Plaintiff BDA respectfully demands judgment as follows:

1)    That a preliminary and permanent injunction be issued enjoining Defendants, any entity owned, controlled or managed in whole or in part by Defendants, and the agents, privies, attorneys, servants, employees, affiliates, successors, assigns, and heirs of the foregoing and all others in active concert or participation with any of them from:

(a)        manufacturing, producing, distributing, selling, offering, advertising, marketing, displaying, promoting, trading in, supplying, accepting orders for, or filling orders for any products bearing or services under the BDA Marks or any other mark that incorporates BLU-RAY or any simulation, reproduction, copy, colorable imitation, or confusingly similar variation thereof (collectively, "Prohibited Designations");

(b)        using the BDA Marks, or any other Prohibited Designation, in or as part of a design, logo, service mark or trademark or otherwise using such a mark in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, or distribution of any business, product or service;

(c)        offering, advertising, or promoting any products or services under any name that includes, in whole or in part, any Prohibited Designations;

(d)        using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendants are associated with BDA or that any product or service provided by Defendants are in any manner associated or connected with BDA, or is authorized, licensed, sponsored, or otherwise approved by BDA;

(e)        filing, maintaining, or retaining any registration or application to register the BDA Marks or any other Prohibited Designation;

(f)        engaging in any other activity constituting unfair competition with BDA, constituting an infringement of the BDA Marks;

(g)        registering, using or retaining any domain name, keyword, social media handle or other online designation or identifier that incorporates the BDA Marks or any Prohibited Designation; and

20

(h)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (f) above.

2)     Directing that Defendants destroy any and all products in its possession bearing a Prohibited Designation, and provide proof of such destruction to BDA within 10 days of entry of judgment.

3)     Directing that Defendants scrub any websites through which it sells, offers, promotes, markets, displays, advertises, or trades in any goods or services, of all references – both visible and in underlying metadata or source codes – of the BDA Marks, or any other Prohibited Designation, and take all other actions as are necessary to ensure that all references it has made or that remain to any goods or services offered or sold under the BDA Marks, both visible and invisible, in all channels where it has advertised or offered for sale any products bearing the BDA Marks, including on websites, on social media pages, in source code, metatags, page tags, metadata, title tags, indices, or in brochures, catalogs, business materials, advertising, or other print or visual materials created by or for or used by Defendants, are permanently deleted or removed.

4)     Directing Defendants to refrain from falsely holding themselves out as licensees of BDA, including on any website or in any other communications, and to take all actions as are necessary to ensure that all such existing false representations are permanently deleted or removed.

5)     Directing that Defendants file with the Court and serve upon Plaintiff's counsel within thirty (30) days after entry of judgment a report in writing under oath, setting forth in detail the manner and form in which it has complied with the above.

6)      Awarding BDA such damages it has sustained or will sustain by reason of Defendants' acts of trademark infringement, unfair competition, and false designation of origin.

7)      Awarding BDA all gains, profits, property, and advantages derived by Defendants from its unlawful conduct and, pursuant to 15 U.S.C. § 1117, awarding BDA an amount up to three times the amount of actual damages sustained as a result of Defendants' violation of the Lanham Act.

8)      Awarding to BDA exemplary and punitive damages to deter any further willful infringement as the Court finds appropriate.

9)      Awarding to BDA its costs and disbursements incurred in this action, including reasonable attorneys' fees pursuant to 15 U.S.C. §1117.

10)     Awarding BDA such damages as it has sustained or will sustain by reason of Defendants' violation of New York's laws on trademark and unfair competition.

11)     Awarding BDA such damages, plus interest thereon, for any and all damages it has sustained or will sustain by reason of Defendants' breach of the Agreement.

12)     Awarding BDA liquidated damages in the amount of 25% of revenues from Defendants' sale, use, import, export, or other distribution of BD-ROM Products pursuant to Article 15.2 of the Agreement.

13)     Awarding BDA compensatory damages of no less than $112,500.

14)     Awarding to BDA interest, including pre-judgment interest on the foregoing sums.

15)     Awarding to BDA such other and further relief as the Court may deem just and proper.

Dated:  April 25, 2022

DECHERT LLP

Jennifer Insley-Pruitt
1095 6th Ave
New York, New York 10036
Tel: (212) 698-3500
Email: jennifer.insley-pruitt@dechert.com

Kevin Gibbs (*pro hac vice* forthcoming)
Cira Centre
2929 Arch Street
Philadelphia, Pennsylvania 19104
Tel:  (215) 994-2393
Email: kevin.gibbs@dechert.com

*Attorneys for Plaintiff*
*Blu-ray Disc Association*