**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT NEW YORK**

| | |
|---|---|
| BLU-RAY DISC ASSOCIATION, | |
| *Plaintiff,* | Civil Action No: 1:22-CV-03365 (LJL) |
| *v.* | |
| TOP MEDIA, INC., and NEW CENTURY MEDIA CORP., | |
| *Defendants.* | |

## FINAL ORDER AND JUDGMENT ON CONSENT

This matter, having been commenced by Plaintiff Blu-ray Disc Association ("BDA") by filing a complaint charging Top Media, Inc. ("Top Media") and New Century Media Corporation ("New Century Media") (collectively, "Defendants") with trademark infringement of a registered trademark under 15 U.S.C. § 1114 (Count I); unfair competition and false designation of origin under 15 U.S.C. § 1125 (Count II); trademark dilution under New York state law (Count III); trademark infringement and unfair competition under New York common law (Count IV); and breach of contract (Count V); and

Defendants having been duly served with copies of the summons and complaint in this Civil Action, having agreed to jurisdiction and venue of this Court, and having stipulated and consented to the entry of this Final Order and Judgment on Consent (the "Consent Judgment") on the terms set forth herein; and

This Court having made the following findings and conclusions:

A.      BDA commenced the Civil Action on April 25, 2022 charging that Defendants infringed BDA's trademarks consisting of or incorporating the term BLU-RAY (collectively, the "BDA Marks"), unfairly competed with BDA, diluted the BDA Marks, and breached their contractual obligations to BDA through unauthorized manufacturing, distribution, and sale of goods incorporating BDA technology and under identical BDA Marks.

B.      The Court has jurisdiction over the subject matter of this action pursuant to Section 39 of the Lanham Act, 15 U.S.C. § 1121, and under Sections 1331, 1338(a) and 1338(b) of the Judicial Code, 28 U.S.C. §§ 1331, 1338(a) and 1338(b).  The Court has supplemental jurisdiction over the state law claims in this matter under Section 1367(a) of the Judicial Code, 28 U.S.C. § 1367(a).

C.      The Court has personal jurisdiction over Defendants because Defendant Top Media consented to jurisdiction in this district in the September 25, 2012 Blu-ray Disc Read Only Format 2.0 and Logo License Agreement between BDA and Top Media (the "ROM2 FLLA License"), because New Century Media is so closely related to Top Media that it is foreseeable that New Century Media would also be bound by the ROM2 FLLA License, and because Defendants have agreed not to contest such jurisdiction.

D.      Venue is proper in this district pursuant to Section 1391(b) of the Judicial Code, 28 U.S.C. § 1391(b).

E.      The actions and conduct of Defendants as detailed in the Complaint constitute trademark infringement, unfair competition, trademark dilution, and breach of contract in violation of federal, state, and common law.

F.      In connection with and as an inducement for the entry of this Order, Defendants have provided representations and undertakings to BDA which are set forth in the settlement agreement between the Parties (the "Settlement Agreement") effective as of April 19, 2023 (the "Effective Date") and attached as Exhibit 1 hereto, which representations are incorporated by reference herein and which are material terms of this Consent Judgment.

G.      Defendants acknowledge that the Court has jurisdiction over them to enter and enforce this Consent Judgment against them; Defendants consent to entry of the Consent Judgment; and Defendants have the legal capacity to enter into this Consent Judgment and to carry out all obligations and requirements herein.

NOW THEREFORE, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1.      Defendants, their officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with any of the foregoing who receive notice of this Judgment are hereby permanently enjoined and restrained from:

a.      manufacturing, producing, distributing, selling, offering, advertising, marketing, displaying, promoting, trading in, supplying, accepting orders for, or filling orders for any products incorporating the BDA Technology or bearing the BDA Marks or any confusingly similar variation thereof or any related services, including replication of such products ("BDA Products," "BDA Services," or collectively, the "BDA Products and Services");

b.      using the BDA Marks, or any confusingly similar variation thereof, in connection with the importation, promotion, advertisement, sale, offering for sale, manufacture, production, or distribution of any business, product or service or on any websites, brochures,

catalogs, or other advertising or promotional materials controlled by Defendants, regardless of media, or otherwise using or displaying the BDA Marks for any purpose;

        c.      making any reference to any BDA Products and Services or using any depiction of any BDA Products for any commercial purpose, or otherwise holding themselves or any one of them out as a seller, supplier, provider or distributor or distributor of any BDA Products and Services;

        d.      processing, packaging, importing, transporting, transferring, consigning, selling, shipping or otherwise moving any BDA Products in any form or in any packaging for purposes of sale or resale;

        e.      making any representations to the effect that they are an authorized supplier or provider of BDA Products and Services;

        f.      using or purchasing keywords associated with BDA, the BDA Marks, or BDA Products and Services or taking other action to generate sponsored ads or to appear in organic search results stemming from internet searches for the same;

        g.      using any false designation of origin or false description (including, without limitation, any letters or symbols), or performing any act, which can, or is likely to, lead members of the trade or public to believe that Defendants are associated with BDA or that any product or service provided by Defendants are in any manner associated or connected with BDA, or are authorized, licensed, sponsored, or otherwise approved by BDA;

        h.      filing, maintaining, or retaining any registration or application to register the BDA Marks or confusingly similar variation thereof;

i.      registering, using or retaining any domain name, keyword, social media handle or other online designation or identifier that incorporates the BDA Marks or any confusingly similar variation thereof; and

j.      instructing, assisting, aiding or abetting any other person or business entity in engaging in or performing any of the activities referred to in subparagraphs (a) through (i) above, or taking any action that contributes to any of the activities referred to in subparagraphs (a) through (i) above.

2.      No later than May 15, 2023, Defendants shall pay BDA $30,000 by wire transfer.

3.      By no later than June 30, 2023, Defendants shall:

a.      Sell and transfer to the possession of a third party buyer or buyers ("Buyer") and deliver to a location of the Buyer's preference all equipment used in the replication, molding, manufacture, marking, or branding of Blu-ray Products that is owned by Defendants ("Owned BDA Equipment");

b.      Transfer physical possession and title of all equipment used in the replication, molding, manufacture, marking, or branding of Blu-ray Products that is owned by a third party and held in Defendants' possession, custody, or control ("Third Party BDA Equipment," and collectively with Owned BDA Equipment, "BDA Equipment") to the owner of the Third Party BDA Equipment;

c.      Destroy any and all remaining BDA Products, BDA Equipment, and related materials in Defendants' possession, custody, or control;

d.      Confirm compliance with this Section by providing BDA's counsel with

      i.      sworn certifications (1) of sale and transfer of the Owned BDA Equipment and delivery of the Owned BDA Equipment to an identified purchaser at an identified location selected by the purchaser; (2) of delivery of the Third Party BDA Equipment to its identified third party owner at an identified location selected by the third party owner; (3) of destruction of all remaining BDA Products and BDA Equipment in Defendants' possession, custody, or control, identifying the BDA Products and BDA Equipment destroyed and specifying the means of destruction, and attesting that, as of the date of certification, Defendants no longer have any BDA Equipment or BDA Products in Defendants' possession, custody, or control or directly or indirectly owned by Defendants; and

      ii.      third party-issued documents sufficient to show delivery of the Owned BDA Equipment and the Third Party BDA Equipment to identified locations and specifying the equipment delivered .

Defendants shall not be compensated by BDA for the cost of the goods transferred, sold, destroyed, or returned to third parties.

4.      By no later than August 31, 2023, Defendants shall pay BDA $40,000 USD by wire transfer.

5.      Defendants shall preserve all books, records (including all hard drives on computers used for business purposes, including servers, as well as all computer disks and

backup disks) and other documents concerning all transactions relating to their manufacture, production, purchase, sale, marketing, or distribution of BDA Products and Services through the date of the Consent Judgment and shall make all such material available to BDA for BDA's review, inspection and copying, upon request of BDA without requirement of legal process, including a subpoena.  Defendants shall file with the Court and serve upon BDA's counsel within thirty (30) days after entry of this Consent Judgment a report in writing under oath, setting forth in detail the manner and form in which they have complied with the above.

6.     Should a court determine that Defendants violated any provision of this Consent Judgment or the Settlement Agreement, failed to comply with any of the obligations contained in this Consent Judgment or the Settlement Agreement, or made any error or omission in any of the representations contained in the Settlement Agreement, such a finding shall constitute contempt of a Court order by Defendants.  Should the Court find that the disobedience, noncompliance, violation or breach was willful, BDA shall be entitled to all relief under 18 U.S.C. § 401, *et. seq.* as well as the following relief and remedies from Defendants, which remedies are cumulative:

a.     to the extent any of the representations set out in Section 1 of the Settlement Agreement are materially false, Defendants shall be deemed to have violated this Consent Judgment and shall pay to BDA $15,000 for each representation that is false;

b.     to the extent Defendants are found to be advertising, promoting, selling, manufacturing, distributing offering for sale, making available for sale, accepting orders for, or filling orders for any BDA Products and Services in violation of this Consent Judgment, Defendants shall pay to BDA liquidated damages in the amount of $50,000 for each different

product or service together with Defendants' gross profits from the sale of each such product or service;

   c. to the extent Defendants fail to comply with the provisions of Sections 2, 3, and 4 herein requiring Defendants to take certain actions and make payments to BDA by designated dates, Defendants shall pay to BDA liquidated damages in the amount of $1,000.00 for each day of non-compliance;

   d. to the extent that Defendants are found to have retained in their possession, custody, or control any BDA Equipment in violation of this Consent Judgment, Defendants shall pay to BDA liquidated damages in the amount of $300,000;

   e. all investigation costs and other costs and fees incurred by BDA in learning of or investigating any violation or breach of this Consent Judgment;

   f. all of BDA's costs and attorney's fees incurred in connection with discovering any violation or breach of this Consent Judgment, assessing the violation or breach of this Consent Judgment, advising Defendants or their counsel of any violation or breach of this Consent Judgment and bringing any action for violation or breach of this Consent Judgment; and

   g. any other contempt remedies to be determined by the Court which may include additional fines and seizure of property.

Should the Court determine that the disobedience, noncompliance, or breach was not deliberate, BDA shall be entitled to the remedies in (c), (d), (e), and (f) above from Defendants, which remedies are cumulative.

Defendants shall not challenge BDA's rights to any of the relief identified above.

7.     This Consent Judgment shall resolve only those claims and demands that were asserted in the Civil Action against Defendants or that could have been asserted by BDA arising out of the facts set forth in the Civil Action, as well as all defenses and counterclaims that were or could have been asserted by Defendants in the Civil Action and all relief and remedies requested or that could have been requested by Defendants and shall constitute a final adjudication of the merits as to any such claims, counterclaims, defenses, remedies, and relief.

8.     The parties to this Consent Judgment waive all right to appeal from entry of this Consent Judgment.

9.     By their signatures and acknowledgements below, the parties understand and agree to be bound by the terms of this Consent Judgment.

10.     Defendants acknowledge that they have obtained, or knowingly and voluntarily chosen not to obtain, advice of counsel with respect to this Consent Judgment.  Defendants further acknowledge that their decision to enter into this Settlement Agreement was not influenced by any promises, representations, or statements made by BDA or anyone acting on its behalf other than those set forth in this Consent Judgment.

11.     This Court shall retain jurisdiction over this matter and the parties to it to enforce the terms of the Consent Judgment and for the purposes of making any other orders necessary to implement the terms of this Consent Judgment and to punish or award damages for violations thereof.  In connection with any further proceedings concerning the subject matter of this Consent Judgment, including the enforcement of this Judgment, service on Defendants will be deemed effective by mailing a copy of any motion papers or other pleading to the Defendants at 2727 Pellissier Place, City of Industry, California 90601.

12.     This Consent Judgment is a final judgment terminating all claims in the Civil

Action and is made part of the public record.

STIPULATED AND AGREED:

Blu-ray Disc Association

By: _Victr D. M.t. C_

Name: _Victor A. Matsuda_

Title: _President_

Date: _April 19, 2023_

Top Media, Inc.

By: _____

Name: CARSON YU

Title: President

Date: 4/17/2023

New Century Media Corp.

By: _____

Name: CARSON YU

Title: President

Date: 4/17/2023

Dated: New York, New York

~~April ____, 2023~~

May 1, 2023

SO ORDERED:

_____

# **EXHIBIT 1**

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement''), effective as of the date of last signature below (the "Effective Date"), is by and among Blu-ray Disc Association, a California nonprofit mutual benefit corporation with a principal place of business at 3855 SW 153rd Drive, Beaverton, Oregon 97003 ("BDA"), on the one hand, and Top Media, Inc., a California corporation with its principal place of business at 2727 Pellissier Place, City of Industry, California 90601 ("Top Media") and New Century Media Corp., a California corporation with its principal place of business at 2727 Pellissier Place, City of Industry, California 90601 ("New Century Media," and together with Top Media, "Defendants"), on the other hand.  The parties to this Agreement may be referred to individually as a "Party" and collectively as the "Parties."

**WHEREAS,** since at least as early as 2004, BDA has licensed specifications for the manufacture of Blu-ray Disc products (the "BDA Technology") and has used and licensed trademarks consisting of or incorporating the term BLU-RAY and related marks for use in connection with Blu-ray Disc Products (all of BDA's registered and common law trademarks collectively, the "BDA Marks") (all products incorporating BDA Technology or bearing the BDA Marks and all related services, including replication of such products, "BDA Products," "BDA Services," or collectively, "BDA Products and Services");

**WHEREAS**, BDA is the owner of all rights in the BDA Marks under common law, and also holds U.S. registrations covering the BDA Marks;

**WHEREAS,** Top Media is a manufacturer of media products and New Century Media is an affiliated company of Top Media that markets, sells, and distributes products manufactured by Top Media;

**WHEREAS**, on or about September 25, 2012, BDA granted Top Media a standard license (the "ROM2 FLLA License") to use BDA Technology to manufacture Blu-ray Disc products, and to mark its Blu-ray Disc products with the BDA Marks;

**WHEREAS**, on or about March 31, 2016, BDA terminated Top Media's ROM2 FLLA License for cause;

**WHEREAS,** after termination of the ROM2 FLLA License and prior to 2021, Defendants resumed manufacturing, distributing, and selling products incorporating the BDA Technology and bearing the BDA Marks without license or authorization and in violation of BDA's rights;

**WHEREAS,** based on its rights in the BDA Technology and the BDA Marks, BDA has objected to Defendants' use of the BDA Technology and the BDA Marks without a license, including by filing a civil action against Defendants in the United States District Court for the Southern District of New York (the "Court") captioned *Blu-ray Disc Association v. Top Media, Inc. and New Century Media Corp.*, 1:22-cv-03365 (the "Lawsuit") alleging, *inter alia*, that Defendants infringed the BDA Marks, diluted the BDA Marks under New York state law, and breached the terms of the ROM2 FLLA License; and

**WHEREAS,** the Parties desire to resolve the dispute between them amicably.

**NOW, THEREFORE,** in consideration of the foregoing premises, the mutual promises and covenants contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

1.   <u>Representations and Warranties of Defendants</u>

In connection with and as an inducement for entry into this Agreement and the Final Consent Judgment, Defendants make the following representations and warranties, which are material terms of and form the basis for entry into this Agreement and the Final Consent Judgment. Should any of the representations and warranties set forth above prove to be false, or should Defendants violate any term of this Agreement, Defendants shall be deemed to have breached the Agreement, and BDA shall be entitled to all relief available to it at law or in equity arising out of the breach of the Agreement, which relief shall be cumulative.

1.1   Other than the business entities Top Media and New Century Media, Defendants do not have any ownership interest in any business involved in the manufacture, production, distribution, sale, or marketing of BDA Products.

1.2   Since March 31, 2016, Defendants' total revenues from the sale or provision of BDA Products and Services have been $1,666,494.25.

1.3   As of the Effective Date, Defendants have in their possession, custody and control the following equipment used in the replication, molding, manufacture, marking, or branding of Blu-ray Products ("BDA Equipment") and no additional BDA Equipment: (1) Bluline II Serial Nos. 100120169 and 100120170, both owned by Defendant New Century Media (together, "Defendants' Replication Lines") and two MoldPro II injection molding machines purchased simultaneously with Defendants' Replication Lines in or about October 2020 and still owned by Defendants ("Defendants' MoldPros"), and (2) Bluline II Serial Nos. 100118488, 100118489, and 100118491, all owned by third party Asia Legend Shanghai (together, "Asia Legend Replication Lines") and three MoldPro II injection molding machines purchased simultaneously with the Asia Legend Replication Lines in or about October 2020 and still owned by Asia Legend Shanghai (the "Asia Legend MoldPros").

1.4   Prior to the Effective Date, Defendants marketed, sold, and provided BDA Products and Services through the website *www.newcenturymediausa.com* and no other website.

1.5   Prior to the Effective Date, Defendants manufactured, produced, and / or provided BDA Products and Services at or through a facility located at 2727 Pellissier Place, City of Industry, California 90601, and at no other location in any jurisdiction.

1.6   All keywords associated with BDA, BDA Technology, or the BDA Marks which Defendants have purchased or employed for any purpose, including generating sponsored ads or appearing in organic search results from internet searches for the BDA Marks, are as follows: "blu-ray duplication" and "blu-ray replication."

1.7   Defendants have no pending orders to purchase or obtain any BDA Products, and have no outstanding purchase orders requiring them to deliver any BDA Products and Services to any third party.

2

1.8 Defendants have not entered into any agreements relating to the manufacture, production, acquisition, distribution, offering for sale, sale or promotion of any BDA Products and Services or BDA Equipment, with the exception of an anticipated agreement to sell Defendants' Replication Lines and Defendants' MoldPros to a third party or third parties (the "Buyer"), as referenced in Section 2.4(a) below.

2. <u>Obligations and Acknowledgements of Defendants.</u>

2.1 Defendants acknowledge BDA's rights in the BDA Technology and BDA Marks and agree not to object to or interfere with the ownership, use, licensing, or registration of the BDA Technology and BDA Marks by or on behalf of BDA.

2.2 As of the Effective Date, Defendants, including their parents, subsidiaries, affiliates, and principals, have ceased, and shall permanently refrain from:

a. manufacturing, producing, distributing, selling, offering, advertising, or marketing any BDA Products and Services;

b. using or displaying the BDA Marks or any confusingly similar variation thereof or otherwise referring to BDA Products and Services or BDA on any websites, brochures, catalogs, or other advertising or promotional materials controlled by Defendants, regardless of media, or otherwise using or displaying the BDA Marks for any purpose, including by removing any such marks from materials controlled by Defendants and deleting any keywords or metatags incorporating such marks; and

c. filing, maintaining, or retaining any trademark registration or application to register the BDA Marks or any confusingly similar variation thereof.

2.3 By no later than May 15, 2023, Defendants shall pay BDA $30,000 USD by wire transfer to the following account:

> Bank Name:  Citi Private Bank
> Bank Address: 153 East 53rd St., New York, NY 10022
> Account Name:  Dechert LLP Main Account
> Account #:  759527772
> ABA #:  021272655
> Swift Code: CITIUS33
> Payment Details: Client Number: 385654 / Matter Number: 190247

2.4 By no later than June 30, 2023, Defendants shall:

a. Sell and transfer to the possession of the Buyer Defendants' Replication Lines and Defendants' MoldPros and deliver the foregoing to a location of the Buyer's preference.  In no event shall the location of delivery be owned, operated, rented, leased, controlled by, or otherwise connected to Defendants.

b. Transfer physical possession and title of the Asia Legend Replication Lines and the Asia Legend MoldPros to Asia Legend Shanghai and deliver the

foregoing to a location of Asia Legend Shanghai's preference.  In no event shall the location of delivery be owned, operated, rented, leased, controlled by, or otherwise connected to Defendants.

        c.     Destroy any and all remaining BDA Products and BDA Equipment in Defendants' possession, custody, or control.  Products subject to destruction pursuant to this Section shall include but are not limited to the following:

        (i)     Finished discs incorporating BDA Technology or bearing BDA Marks;

        (ii)     Stampers;

        (iii)     Physical archives of BD content masters, including but not limited to LTO tapes and BD-R backups);

        (iv)     Printing screens and plates;

        (v)     Cases for finished discs; and

        (vi)     Packaging materials bearing the BDA Marks, including boxes, wraps, and booklets.

        d.     Confirm compliance with this Section by providing BDA's counsel with the following:

        (i)     A completed and executed version of Exhibit A to this Agreement signed by Defendants identifying the Buyer and attesting to the sale and transfer of possession of Defendants' Replication Lines and Defendants' MoldPros to the Buyer and delivery of the foregoing to an identified location;

        (ii)     A completed and executed version of Exhibit B to this Agreement signed by Defendants attesting to the transfer of possession of the Asia Legend Replication Lines and the Asia Legend MoldPros from Defendants to Asia Legend Shanghai and delivery of the foregoing to an identified location;

        (iii)     Third-party documents sufficient to evidence delivery of (1) Defendants' Replication Lines and Defendants' MoldPros to the location identified in the completed Exhibit A and (2) the Asia Legend Replication Lines and Asia Legend MoldPros to the location identified in the completed Exhibit B, which third-party documentation shall, at a minimum, identify the BDA Equipment

delivered, location of delivery of the items, and the date of delivery; and

(iv)    A completed and executed version of Exhibit C to this Agreement signed by Defendants and attesting to the destruction of any remaining BDA Products and BDA Equipment in Defendants' possession, custody, or control following compliance with Sections 2.4(a)-(d)(iii) herein, identifying the BDA Products and BDA Equipment destroyed, and specifying the means of destruction, and further attesting that following said destruction and as of the date of execution of the document, Defendants no longer have any BDA Equipment or BDA Products in Defendants' possession, custody, or control or directly or indirectly owned by Defendants.

Defined terms in Exhibits A-C shall be as indicated in this Agreement.

        2.5    By no later than August 31, 2023, Defendants shall pay BDA $40,000 USD by wire transfer to the following account:

> Bank Name:  Citi Private Bank
> Bank Address: 153 East 53rd St., New York, NY 10022
> Account Name:  Dechert LLP Main Account
> Account #:  759527772
> ABA #:  021272655
> Swift Code: CITIUS33
> Payment Details: Client Number: 385654 / Matter Number: 190247

    3.    <u>Obligations of BDA</u>.

        3.1    Within five (5) business days of the Effective Date, BDA shall provide Defendants signed letters on BDA letterhead (a "BDA Release Letter") stating that:

        a.    BDA shall not bring suit against Asia Legend Shanghai based on the fact that Asia Legend Shanghai owns or took possession of the Asia Legend Replication Lines and the Asia Legend MoldPros; and

        b.    BDA shall not bring suit against either Asia Legend Shanghai or Inception Entertainment Shanghai Co., Ltd. based on the fact that either entity purchased or took possession of Defendants' Replication Lines and Defendants' MoldPros.

        3.2    If Defendants ultimately wish to sell Defendants' Replication Lines and Defendants' MoldPros to a Buyer other than Asia Legend Shanghai or Inception Entertainment Shanghai Co., Ltd., Defendants may request a BDA Release Letter in the Buyer's name from BDA and BDA shall provide the same within five (5) business days of receipt of Defendants' request. For avoidance of doubt, the Buyer need not be limited to a single entity or individual and the Buyer may be chosen at Defendants' discretion, provided that Buyer shall not be owned, operated, or

controlled by or otherwise related to or affiliated with Defendants or any owner, manager, principal, parent, subsidiary, predecessor, successor, employee, officer, or director thereof or any other party acting by or through them or with or under the direction or in privity with them, and shall not be identified on the U.S. Trade Consolidated Screening List.

4.      <u>Final Consent Judgment.</u>  Simultaneously with the execution of this Agreement, the Parties shall execute the Final Consent Judgment in the form annexed hereto as Exhibit D or in such other form as may be required by the Court, and BDA shall file the Final Consent Judgment with the Court.  The terms of the Final Consent Judgment, as Ordered by the Court, shall form part of this Agreement.  Pursuant to the Final Consent Judgment, the Court retains jurisdiction to enforce the provisions of this Agreement.

5.      <u>Joint Undertakings.</u>  Neither Party shall assist any third party in taking any action, or cause or request any third party to take any action, that the Party is prohibited from taking under this Agreement.

6.      <u>Remedies for Breach.</u>

6.1      In the event that one or more of Defendants should breach its obligations under this Agreement or should any of Defendants' representations or warranties prove false, BDA shall be entitled to the remedies set forth in Section 6 of the Final Consent Judgment.

6.2      Nothing in this provision shall be interpreted to limit any remedies arising at law or equity for any breach of this Agreement or to prevent BDA from asserting claims in addition to breach of contract.

7.      <u>General Terms.</u>

7.1      <u>Representations & Warranties.</u>  The Parties represent and warrant that they have the capacity and right to enter into this Agreement, that the individuals signing below have done so with full authority to bind the respective Parties, and this Agreement will not violate any other agreement to which the Party is or becomes a party, nor any law, court order, or decree to which a Party is subject.

7.2      <u>Acknowledgments.</u>  Each Party represents and acknowledges that (i) it has been represented by counsel, has read and understands all the terms of this Agreement, and has had an adequate opportunity to consider such terms and (ii) the Parties have jointly participated in the drafting of this Agreement, and no Party shall be deemed the drafter for the purposes of interpreting any term or provision herein.

7.3      <u>Territory and Term.</u>  This Agreement and all obligations contained herein shall be worldwide in scope and effect.  The Agreement shall continue in full force and effect in perpetuity.

7.4      <u>Governing Law and Venue.</u>  This Agreement shall be governed and construed in accordance with the laws of the State of New York, without regard to its conflict of law provisions.  Venue for any dispute concerning, involving, or in any way implicating this Agreement shall lie exclusively in the federal and state courts of New York County.

7.5     Costs.  Each Party shall bear its own costs, including without limitation attorneys' fees, court fees, office fees, and costs, associated with all matters that are the subject of this Agreement, except as noted in Section 7.6.

7.6     Prevailing Party's Entitlement to Fees and Costs.  If litigation arises out of an alleged or actual breach of this Agreement, the prevailing party is entitled to recover its reasonable attorneys' fees and costs incurred in direct connection with the successful enforcement of this Agreement or successful defense of an enforcement action involving the Agreement.

7.7     Binding Nature.  This Agreement shall inure to the benefit of and be binding and enforceable against the Parties and their respective subsidiaries, affiliates, successors, licensees, assigns, officers, directors, principals, agents, and representatives and all others acting by or through them or with or under their direction or in privity with them.

7.8     Mutual Release.  Contingent on compliance with the terms of this Agreement by the Parties, the Parties, on their own behalf and on behalf of their owners, parents, subsidiaries, predecessors, successors, licensees, assigns, transferees, employees, partners, officers, directors, and shareholders, hereby release and forever discharge each other, as well as each other's respective owners, parents, subsidiaries, predecessors, successors, licensees, assigns, transferees, employees, partners, officers, directors, and shareholders, of and from any and all claims, defenses, debts, liabilities, demands, obligations, damages, losses, costs, expenses and attorneys' fees alleged in the Lawsuit or which could have been alleged therein.

7.9     Waiver of California Civil Code § 1542.  Each Party has read, and knowingly and intentionally waives any protection afforded to it by, California Civil Code Section 1542, which provides:

> A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.

7.10     Enforceability.  If any provision of this Agreement is found invalid or unenforceable, the remainder of this Agreement will remain unaffected, and the invalid or unenforceable provision shall be replaced with a valid and enforceable provision that most nearly reflects the original intent of the Parties.  The failure of either Party to enforce any provision of this Agreement, or any delay by any Party in the enforcement of any right hereunder shall not be deemed a waiver of that provision.  No waiver of any provision of this Agreement or of any rights or obligations of any Party hereunder will be effective unless in writing and signed by the Party waiving compliance.  The Parties' remedies described through this Agreement are not intended to be exclusive of any other remedies, but each and every such remedy is cumulative and is in addition to any other remedies, existing now or hereafter, at law, in equity, or by statute.

7.11     Entire Agreement; Amendments.  This Agreement represents the entire agreement of the parties with respect to the subject matter hereof and supersedes all prior and contemporaneous agreements, understandings, negotiations, representations and discussions, whether oral or written, between the parties with respect to its subject matter.  This Agreement

shall not be modified, amended, or in any way altered except by writing executed by both parties and referring to this Agreement.

        7.12   <u>Notice</u>.  Any notice or other communication required to be given pursuant to this Agreement shall be in writing and delivered by registered mail to the following addresses, with a copy to counsel by email:

        If to BDA:

            3855 SW 153rd Drive
            Beaverton, Oregon 97003

        With a copy to:

            *jennifer.insley-pruitt@dechert.com*
            *trademarks@dechert.com*
            *admin@mail.blu-raydisc.com*

        If to Defendants:

            2727 Pellissier Place
            City of Industry, California 90601

        With a copy to:

            *jchoi@jchoilaw.com*

A Party may change the address to which notices, requests, demands, claims and other communications hereunder are to be delivered by giving the other Party notice in the manner herein set forth.

        7.13   <u>Interpretation</u>.  The headings in this Agreement are for the convenience of the Parties only and are not intended to describe, interpret, define, or limit the scope, extent, or intent of this Agreement or any provision thereof.

        7.14   <u>Counterparts.</u>  This Agreement may be executed in two or more counterparts, each of which shall be deemed an original and shall bind the signatory, but all of which together shall be considered one and the same instrument.  Signatures delivered by electronic transmission are acceptable and shall be binding.

        7.15   <u>Further Assurances.</u>  The Parties agree to prepare, execute, and deliver such further documents, and to perform such acts, as are necessary or appropriate to implement, effectuate and carry out the terms, provisions, objectives and intent of this Agreement.

IN WITNESS WHEREOF AND INTENDING TO BE BOUND, the Parties hereby execute this Agreement through their duly authorized representatives.

Blu-ray Disc Association

By: _____

Name: Victor A. Matsuda

Title: President

Date: April 19, 2023

Top Media, Inc.

By: _____

Name: CARSON YU

Title: President

Date: 4/17/2023

New Century Media Corp.

By: _____

Name: CARSON YU

Title: President

Date: 4/17/2023

## <u>EXHIBIT A</u>

### CERTIFICATION OF SALE AND DELIVERY TO BUYER

THE UNDERSIGNED hereby certify as follows:

1.      On the date(s) of _____, the following third party Buyer(s)

purchased Defendants' Replication Lines and Defendants' MoldPros from Defendants:

_____

_____

2.      On the date(s) of _____, Defendants' Replication Lines

and Defendants' MoldPros were delivered to the Buyer(s) at the below address(es) by the

identified carrier or delivery method:

| Buyer(s) | Address(es) | Carrier(s) / Delivery Method(s) |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

3.      As of the date of signature of this Certification, Defendants' Replication Lines

and Defendants' MoldPros are no longer in the physical possession of Defendants, and

10

Defendants no longer hold title to or any other financial interest in Defendants' Replication Lines or Defendants' MoldPros.

4.      Each individual signing this Certification has full and complete authority to act on behalf of and bind the party for which he/she has signed.

The undersigned hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**Top Media, Inc.**

By:      _____

Name:_____

Title:_____

Date:_____

**New Century Media Corp.**

By:_____

Name:_____

Title: _____

Date:_____

**EXHIBIT B**

**CERTIFICATION OF DELIVERY TO ASIA LEGEND SHANGHAI**

THE UNDERSIGNED hereby certify as follows:

1.      On the date of _____, the Asia Legend Replication

Lines and the Asia Legend MoldPros  were transferred and delivered to Asia Legend Shanghai at

the below address(es) by the identified carrier or delivery method:

| Address(es) | Carrier(s) / Delivery Method(s) |
|---|---|
|  |  |

2.      As of the date of signature of this Certification, the Asia Legend Replication

Lines and the Asia Legend MoldPros are no longer in the physical possession of Defendants, and

Defendants no longer hold title to or any other financial interest in the Asia Legend Replication

Lines or the Asia Legend MoldPros.

3.      Each individual signing this Certification has full and complete authority to act on

behalf of and bind the party for which he/she has signed.

The undersigned hereby declare under penalty of perjury under the laws of the United States that

the foregoing is true and correct.

12

**Top Media, Inc.**

By:_____

Name:_____

Title:_____

Date:_____


**New Century Media Corp.**

By:  _____

Name:_____

Title:_____

Date:_____

**<u>EXHIBIT C</u>**

**CERTIFICATION OF DESTRUCTION**

THE UNDERSIGNED hereby certify that, as of the date of signature of this Certification of Destruction, the following is true and correct.

1.       Defendants' Replication Lines and Defendants' MoldPros are no longer in the physical possession of Defendants, and Defendants no longer hold title to or any other financial interest in Defendants' Replication Lines or Defendants' MoldPros.

2.       The Asia Legend Replication Lines and the Asia Legend MoldPros are no longer in the physical possession of Defendants.

3.       On the dates provided below, Defendants destroyed any remaining BDA Products and BDA Equipment in Defendants' possession, custody, or control in compliance with the Agreement, as follows:

| Date of Destruction | BDA Products / BDA Equipment Destroyed | Means of Destruction |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |
|  |  |  |

4.      As of the date of signature of this Certification, Defendants no longer have any BDA Equipment or BDA Products in Defendants' possession, custody, or control or directly or indirectly owned by Defendants.

5.      Each individual signing this Certification has full and complete authority to act on behalf of and bind the party for which he/she has signed.

The undersigned hereby declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**Top Media, Inc.**

By:_____

Name:_____

Title:_____

Date:_____

**New Century Media Corp.**

By:_____

Name:_____

Title:_____

Date:_____

**EXHIBIT D**

**[So-Ordered Consent Judgment]**